Mark F. LITTLE, et al., Plaintiffs,

v.

CITY OF GREENFIELD, a municipal corporation of the State of Wisconsin, et al., Defendants.

Civ. A. No. 83–C–1625.

United States District Court, E.D. Wisconsin.

Nov. 25, 1983.

James A. Walrath, Shellow, Shellow & Glynn, S.C., Milwaukee, Wis., for plaintiffs.

James D. McDevitt and James S. Smith, Borgelt, Powell, Peterson & Frauen, S.C., Milwaukee, Wis., for defendants.

Roger C. Pyzyk, City Atty., City of Greenfield, Milwaukee, Wis., for City of Greenfield.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

On September 22, 1983, the plaintiffs filed a complaint in this court under section 1983 of Title 42, U.S.C., seeking a declaratory judgment and injunctive relief to redress alleged deprivations, under color of state law, of their rights of free speech, due process, and equal protection of the laws guaranteed by the First and Fourteenth Amendments to the United States Constitution. The plaintiffs are: Mark F. Little, Jerry Steuernagel, and Pamela Steuernagel, individuals; and A.A.A. Fun Center, Inc., a Wisconsin corporation. These plaintiffs have sued the City of Greenfield, Wisconsin; Greenfield City Clerk Henry A. Rajchel; Greenfield City Attorney Roger C. Pyzyk; and the Chief Building Inspector of Greenfield, Gerald Driscoll.

The plaintiffs seek to operate a nude dancing entertainment business at 4267 West Loomis Road, Greenfield, Wisconsin. This action challenges the enforcement of certain City of Greenfield ordinances against the plaintiffs. This court has jurisdiction under 28 U.S.C. § 1343.

This matter came on for conference October 6, 1983, on the plaintiffs' application for a preliminary injunction. At that time the Court issued an order restraining the defendants from enforcing sections 21.-

085(1), 21.06(6), and 13.04 of the Greenfield Municipal Code until such time as a decision could be rendered on the plaintiffs' motion for a preliminary injunction. That motion is before the Court at this time.

The Court held an evidentiary hearing on November 2, 1983. The parties agreed that the Court could consider, in addition to the oral testimony, the facts contained in the following submissions: (1) the verified complaint filed on September 22, 1983; (2) Greenfield Municipal Code §§ 21.06(4)(e)–(g), 21.06(6) as amended, 21.085, & 13.04 (Plaintiffs' Exhibits A & C–D); (3) letter of March 15, 1983, from defendant Driscoll to plaintiff Little (Plaintiffs' Exhibit B); (4) two aerial photographs of the premises in question (Plaintiffs' Exhibits F–1 & F–2); (5) minutes of the Greenfield Common Council meeting of April 19, 1983 (Plaintiffs' Exhibit G); (6) minutes of the Greenfield Plan Commission meeting of June 14, 1983 (Plaintiffs' Exhibit H); (7) memorandum of Greenfield Mayor Francis P. Havey dated October 11, 1983 (Plaintiffs' Exhibit I); (8) affidavit of Jerry Steuernagel, owner of the premises in question; (9) memorandum of November 7, 1978, from the Greenfield Fire Department to the city building inspector (Plaintiffs' Exhibit J); (10) minutes of the 1977 public hearing at which a special use permit for a skateboard park was approved (Plaintiffs' Exhibit K); (11) "Brief in Support of Motion for Temporary Restraining Order" filed September 27, 1983; and (12) the "Reply Brief in Support of Preliminary Injunctive Relief" filed November 2, 1983.

The parties also agreed that the Court could consider the facts set forth in the following: (1) "Brief in Opposition to Motion for Permanent Injunction" filed October 27, 1983; (2) Greenfield Municipal Code §§ 21.06(4)(a)–(g) as amended, 21.06(6), & 21.01 (Defendants' Exhibits A–C & G); (3) minutes of the Greenfield Common Council meeting of September 6, 1983 (Defendants' Exhibit D); (4) affidavit of Greenfield Fire Chief Ray Szalacinski (Defendants' Exhibit E); and (5) affidavit of Greenfield Police Captain Richard W. Karweik (Defendants' Exhibit F).

From the oral testimony and the above cited materials, I now make the following findings of fact and conclusions of law.

The premises at 4267 West Loomis Road consists of a commercial, one-story building constructed in 1977 with floor space of 10,400 square feet. The building premises meets all state and local building, plumbing, and electrical code requirements. The building originally was designed to serve as a skateboard park with facilities to accommodate at least 400 people who would both participate in skateboarding activities and attend as spectators. The building is located more than 200 feet from Loomis Road and is serviced by a standard, paved driveway entrance from Loomis Road. The premises is not located within 500 feet of any residentially zoned district, school, or church.

The premises at 4267 West Loomis Road is located in an area zoned as "M–1," constituting a Light Manufacturing District. Numerous uses are permitted under this zoning classification, without requirement of a special use permit, including numerous entertainment businesses such as: circus, carnival, and similar transient amusement enterprises; public riding academies; driving ranges and miniature golf courses; taverns; arenas and auditoriums with a capacity of less than 2,500 seats; meeting halls; billiard parlors and pool halls, bowling alleys; commercial parking lots; dance studios and motion picture theatres. Greenfield Municipal Code §§ 21.06(4)(e), (g). In February of 1979, the City of Greenfield amended its ordinance to require a special use permit for "[r]estaurants and taverns—including live entertainment and dancing." Greenfield Ordinance No. 1051. See Greenfield Zoning Code § 21.06(4)(e)64.

On November 15, 1977, plaintiff Jerry Steuernagel obtained a special use permit from the City of Greenfield for operation of the premises as a skateboard park. In January and February of 1983, the premises was leased for a monthly rental to the A.A.A. Fun Center, Inc., which then obtained a certificate of occupancy from defend-

ant Driscoll to use the premises as a skateboard park. An entertainment license and soda water beverage license also was issued by defendant Rajchel.

On March 14, 1983, A.A.A. Fun Center, Inc., opened for business as the "Bell E. Buttons" nightclub. The adults-only nightclub featured comedy acts and dance presentations, during which the live dancers periodically were nude. The nightclub was managed and operated by plaintiff Little.

By a letter dated March 15, 1983, defendant Driscoll advised plaintiff Jerry Steuernagel that his use of the premises was not a permitted use and was in violation of the certificate of occupancy. Defendant Driscoll demanded that the entertainment presentations immediately cease under threat of prosecution by defendant Pyzyk.

On March 17, 1983, defendant Pyzyk caused a civil action for injunctive relief to be commenced in the Circuit Court of Milwaukee County on behalf of the City of Greenfield against Jerry Steuernagel, Pamela Steuernagel, Mark Little, and A.A.A. Fun Center, Inc., in Case No. 607–928. The action alleged that plaintiffs' business use of the premises was not permitted because a special use permit had not been issued to the premises for nude dancing entertainment, and an entertainment license had not been issued for the same activity.

Defendant Pyzyk obtained a temporary restraining order from the Circuit Court of Milwaukee County on March 17, 1983, prohibiting the plaintiffs herein from operating any business (including nude dancing entertainment) other than a skateboard park pending resolution of the controversy. Subsequently, the Circuit Court of Milwaukee County continued the temporary order against plaintiffs' entertainment business while providing that the action would be dismissed if a special use permit application were filed with the City of Greenfield and acted upon by the Common Council of the City of Greenfield. In the interim, the Greenfield Common Council enacted section 21.085(1) which specifically prohibits nude dancing entertainment among other sex related uses.

Thereafter, plaintiffs submitted a special use permit application to defendant Driscoll on March 23, 1983, and resubmitted such application to Driscoll on or about May 17, 1983. Following review by the Plan Commission, the plaintiffs' petition was submitted for public hearing with the following recommendation with conditions:

That 72 parking spaces be provided to comply with the 180 seating capacity. That the applicant will light and pave the parking lot area. That the entrance be restricted as a fire lane and be posted for no parking. That the operation will be restricted to the existing lounge area. That the sign size will be limited to 105 sq. ft. That the temporary structure will be removed. That the proper determination will be made that the special use permit conforms to and is compatible with the area.

At a public hearing occurring on September 6, 1983, the Common Council of the City of Greenfield denied plaintiffs' application for a special use permit. The permit was denied, in fact, because nude dancing entertainment was featured.

As a result, defendant Rajchel has refrained from issuing a special use permit to the plaintiffs as requested and an entertainment license, and defendant Driscoll has denied plaintiffs a certificate of occupancy as a nightclub featuring comedy and nude dancing entertainment.

On September 8, 1983, the Circuit Court of Milwaukee County ordered that the action by the City of Greenfield against the plaintiffs herein be dismissed. A formal written order to that effect was filed in the Circuit Court of Milwaukee County on or about September 15, 1983.

The plaintiffs now desire to resume the presentation of adults only entertainment featuring comedy acts and dance presentations as described. Because the plaintiffs have been denied a special use permit and because they are threatened with prosecution under the Greenfield Municipal Code if they should resume their nude dancing en-

tertainment business, the plaintiffs have not resumed the live entertainment business at the above-described premises and have refrained from using the premises to present such forms of expression.

As noted earlier, section 21.06(4) of the Greenfield Municipal Zoning Code enumerates an array of land uses permitted in each district without special action by the municipality. In contrast to the uses expressly permitted, the Code expressly prohibits certain land uses. Section 21.085 states in pertinent part:

(1) PROHIBITED USES. The following uses of land are specifically prohibited except as provided under this chapter: sex bookstores, coin-operated motion picture devices showing sex movies, and cabarets featuring nude or semi-nude dancers, strippers or similar type entertainment.

(2) PURPOSE AND INTENT. It is declared to be the purpose and intent of this chapter to protect the public health, safety, welfare and morals of the community, to promote the stability of property values, and impose restrictions upon those activities which pander to gross sexuality in a manner that would detract from the neighborhood, adversely affect the property values and increase crime and violence. In recognition of the protections afforded to the citizens under the First and Fourteenth Amendments, it is not the intent of this chapter to inhibit freedom of speech, press, or expression.

Subsection seven of this provision, however, allows that the City Council may waive these prohibitions and approve such a use, provided that the use is not within 500 feet of any residentially zoned district, school, or church, and provided that a special use permit is obtained in accordance with the procedure outlined in section 21.06(6).

To obtain a special use permit, an applicant must submit to the building inspector a petition containing certain information pertinent to the proposed special use. The building inspector then automatically refers the completed petition to the Plan Commission for its consideration and recommendations. The Commission may recommend Common Council approval, approval with conditions, or disapproval. In making its recommendation, the Plan Commission specifically is to consider the following:

(a) That the use intended is of the same general character of the use permitted in the zone district for which the petition is presented.

(b) That the proposed use is compatible with that of the adjoining development, and is not contrary to the general welfare of the City or of the immediate neighborhood, consideration to be given to traffic problems which may arise, access to the premises and public safety.

(c) Such other matters as may be pertinent considering the nature of the requested use.

Greenfield Zoning Code § 21.06(6)(2).

Once the Common Council has its recommendation, it makes the final decision on issuance of the permit in accordance with section 21.06(6)(3) which states:

(3) Common Council approval. The Plan Commission shall recommend its approval or disapproval to the Common Council within 30 days of its receipt of the petition. The Plan Commission may recommend approval with conditions. The Common Council shall hold a public hearing upon the requested special use permit and shall give notice by class 1 publication. The Common Council may grant the permit after the public hearing upon such terms and conditions as recommended by the Plan Commission.

Beyond this special use permit procedure, the owner of an establishment further may be required to obtain an entertainment license under section 13.04 of the city's Municipal Code.

The plaintiffs contend that this zoning scheme singles out the nude dancing entertainment business and effectively bans it from occurring anywhere within the Greenfield city limits. They allege that their rights to equal protection of the laws, freedom of speech, and due process of law are

being abridged by the threatened enforcement of the zoning code against them. The plaintiffs characterize section 21.085(1) as a direct, content-based ban on nude dancing entertainment, a constitutionally protected form of expression, which prohibition does not withstand strict scrutiny. They state that the code prohibits nude or semi-nude dancing entertainment throughout the municipality while permitting, either with or without a special use permit, other forms of entertainment.

Additionally, it is argued that the waiver provision, section 21.085(7), fails to save the ordinance because that subsection is both vague in its language and overbroad in its reach. The ordinance establishes no standards whatsoever to limit or guide the municipality's exercise of discretion in waiving prohibited uses.

Even once the blanket prohibition is waived, the plaintiffs contend, the owner of a nude dancing establishment still must secure a special use permit under section 21.06(6) and an entertainment license under section 13.04. The plaintiffs argue that these provisions similarly lack the standards required under the Constitution to guide the Common Council in exercising its discretion to grant or deny special use permits and entertainment licenses. Thus, even if the prohibited use provision were waived as to the plaintiffs, the special use provision and entertainment license requirement would have to be enjoined as vague and overbroad.

Finally, the plaintiffs assert that the city's special permit procedure under section 21.06(6) operates as a prior restraint on the exercise of their First Amendment right of free expression.

The defendants, on the other hand, concede the plaintiffs' constitutional claims with respect to sections 21.085 and 13.04 of the Greenfield ordinance which directly prohibit nude dancing as a land use and which require the issuance of an entertainment license. The defendants have chosen to waive their enforcement of these two provisions as against the plaintiffs and to confine their argument to the validity of Greenfield's special use permit procedure in section 21.06(6). This is the procedure that the defendants have invoked against the plaintiffs.

Thus narrowed, the issue according to the defendants is whether a municipality may enforce a content-neutral land use ordinance to regulate intended uses of land on the basis of the impact of that use on public safety. The defendants contend that the criteria employed by Greenfield in evaluating the plaintiffs' proposed use were objective and clearly understood by the plaintiffs. The standards, they urge, are neither vague nor overbroad.

■ Before a district court will exercise its discretion to issue a preliminary injunction, the moving party must demonstrate as follows:

(1) it has at least a reasonable likelihood of success on the merits, (2) it has no adequate remedy at law and will otherwise be irreparably harmed, (3) the threatened injury to it outweighs the threatened harm the preliminary injunction may cause the defendants, and (4) the granting of the preliminary injunction will not disserve the public interest.

*Syntex Ophthalmics, Inc., v. Tsuetaki,* 701 F.2d 677, 681 (7th Cir.1983) (quoting *Machlett Laboratories, Inc. v. Techny Industries, Inc.,* 665 F.2d 795, 796–97 (7th Cir. 1981)).

I find from the facts previously set forth that the ordinances and actions of the defendants as described above have had and will continue to have a deterrent effect upon the plaintiffs who seek to exercise their rights under the First and Fourteenth Amendments to present entertainment which is protected speech and expression. Plaintiffs fear retaliatory action by the defendants and protracted litigation should they resume their entertainment business. Enforcement of the above-described ordinances against the plaintiffs and prosecutions for violations thereof have caused and will continue to cause the plaintiffs grave, immediate, and irreparable harm including, but not limited to, loss of entertainer con-

tracts, loss of entertainment performances, loss of customers, and loss of business revenues. I find that the plaintiffs have no other adequate remedy at law.

Furthermore, the threatened injury to the plaintiffs' constitutional rights outweighs the harm that the defendants would suffer if, by virtue of a preliminary injunction, the defendants should be enjoined from enforcing the Greenfield ordinance in question against the plaintiffs during the pendency of this action. Likewise, I cannot conclude that issuance of such a preliminary injunction would disserve the public interest.

The real issue in this case is whether the plaintiffs have a reasonable likelihood of success on the merits of their constitutional claims. I find as a matter of law that they do.

For the purposes of the instant motion, the defendants do not contest the plaintiffs' likelihood of prevailing on their challenge to Greenfield's prohibited use provision (§ 21.085) or to Greenfield's entertainment licensing ordinance (§ 13.04). At issue is whether it is reasonably likely that Greenfield's special use ordinance (§ 21.06(6)) infringes the plaintiffs' constitutional rights.

■ Nude dancing entertainment, whether live or on film, is a form of expression within the protective mantle of the First Amendment. *Schad v. Mount Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). It is not disputed in this case that the entertainment offered at the plaintiffs' establishment is protected First Amendment activity; the defendants do not argue that the live nude dancing entertainment at "Bell E. Buttons" is obscene, and the ordinance at issue does not purport to regulate obscene matter.

■ Furthermore, section 21.06(6) of the Greenfield Municipal Code constitutes a prior restraint on the plaintiffs' First Amendment activity. *See Entertainment Concepts, Inc. III v. Maciejewski,* 631 F.2d 497, 504 (7th Cir.1980) (special use permit requirement, like a licensing procedure, is a prior restraint). Greenfield Ordinance No. 1051, enacted in February 1979, requires that a special use permit be obtained before a restaurant or tavern featuring live entertainment and dancing may open in Greenfield districts that are zoned M–1. Similarly, section 21.085(7) of the ordinance provides that all prohibited uses, once waived, become subject to the special use requirement. The plaintiffs' proposed use clearly is governed by the special use requirement of section 21.06(6).

■ Although the ordinance in question is a prior restraint, not all prior restraints are invalid. A municipality may subject the exercise of First Amendment freedoms to the prior restraint of a permit requirement, but only when it provides narrowly drawn, objective, reasonable, and definite standards to guide the administering officials. *Shuttlesworth v. Birmingham,* 394 U.S. 147, 151, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969). Regulatory schemes which delegate to officials in an open-ended fashion the power to decide when permits are issued are overbroad because they grant such officials the power to discriminate indirectly through selective enforcement on the basis of communicative content.

■ To obtain a special use permit under section 21.06(6) of the Greenfield Municipal Code, a petition first must be provided to the Greenfield building inspector. If that petition contains the requisite information, it is referred to the Greenfield Plan Commission for its review and recommendations based upon the following factors:

(a) That the use intended is of the same general character of the use permitted in the zone district for which the petition is presented.

(b) That the proposed use is compatible with that of the adjoining development, and is not contrary to the general welfare of the city or of the immediate neighborhood, consideration to be given to traffic problems which may arise, access to the premises and public safety.

(c) Such other matters as may be pertinent considering the nature of the requested use.

Upon completion of its review, the Plan Commission refers the petition to the Common Council for final approval. The Common Council "may grant the permit after [a] public hearing upon such terms and conditions as recommended by the Plan Commission." Greenfield Municipal Code § 21.06(6)(3).

The ordinance in question undertakes precisely the open-ended delegation of authority that the Due Process Clause forbids. Special use permits are issued in the final analysis only on Common Council approval. The ordinance specifies no standards whatever to guide the Common Council's decision. The Common Council may act explicitly upon the findings of the Plan Commission, but it is not required to do so. Moreover, the Common Council is not obliged under the ordinance to consider the three above-mentioned factors governing Plan Commission review.

Furthermore, even if the ordinance could be construed generously to require Common Council consideration of the factors enumerated for Plan Commission study, the delegation would still violate the Due Process Clause of the Constitution. The criteria governing issuance of the special use permit are indefinite; they can afford the businessman only a vague and foggy idea whether a proposed special use will be permissible in Greenfield or whether it will be impermissible. Whether a proposed business is "of the same general character" as other businesses in the area, whether it "is compatible" with adjoining properties, whether it is "contrary to the general welfare of the city or of the immediate neighborhood," and whether it is otherwise impermissible based on "such other matters as may be pertinent" are criteria which, in conjunction, are so vague that they violate the Due Process Clause of the Fourteenth Amendment.

The defendants contend that the special use provision of the ordinance is facially neutral, and that the factors actually governing the Common Council's denial of the permit are not unduly vague. The municipality emphasizes, first, that the special use requirement applies to all live entertainment without regard to nudity. Second, the City of Greenfield argues that the plaintiffs' petition was denied because their proposed use was not compatible with the surrounding area and, specifically, because of public safety considerations arising both from increased traffic hazards and from inadequate access of emergency vehicles to the premises. Although the vote of the Common Council members on September 6, 1983, was not accompanied by a statement of reasons, the defendants rely on the minutes of the Common Council meeting and the testimony of Mayor Havey and City Engineer Dwyer at the injunction hearing in this case as evidence that traffic and safety considerations were motivating factors in the denial of a permit for the Bell E. Buttons nightclub. These factors, the defendants urge, are not unduly vague.

Greenfield's special use requirement, on its face, is not targeted directly at nude dancing. Despite this facial neutrality, I find that the application of section 21.06(6) to the plaintiffs' establishment in the circumstances of this case was motivated by an intention on the part of city officials to single out and suppress a form of expression protected by the First Amendment, namely, nude dancing. As such, the denial of a special use permit to the plaintiffs constitutes content-based discrimination violative of the Equal Protection Clause of the Fourteenth Amendment.

It is no secret that the issue for members of the Greenfield Common Council was one of nudity, not public safety. This fact finds support in the Plan Commission and Common Council discussions of the proposed use. Additionally, when the premises originally was opened as a skateboard park, this intended use, admittedly different from an evening nude dancing establishment, generated not nearly the same fear of traffic and safety problems voiced after the subject of nudity surfaced. Moreover, just one month after this nude dancing nightclub opened, the Common Council passed another ordinance, section 21.085, which specifically and unambiguously pro-

hibited nude dancing entertainment throughout the City of Greenfield. In the circumstances of this case, traffic and safety considerations served simply as a pretext for official conduct targeted at communicative impact contrary to the Constitution.

Because the neutral criteria asserted by the defendants serve as a pretext for what is in fact a content-directed prior restraint, the ordinance is required under the Constitution to have certain procedural safeguards designed to avoid the dangers of censorship. For example, it must provide for a reasonably prompt consideration of the applicant's right to do business as well as a reasonably prompt judicial review of that decision with the municipality having the burden of instituting such review proceedings. *See Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 560, 95 S.Ct. 1239, 1247, 43 L.Ed.2d 448 (1975). The Greenfield ordinance provides none of these safeguards, and thus is invalid also under the First and Fourteenth Amendments as an invalid prior restraint on protected communication.

In short, the plaintiffs stand to be irreparably harmed by the continued enforcement of section 21.06(6) against them. This threatened harm, for which the plaintiffs have no adequate legal remedy, outweighs on balance the harm the defendants would suffer if enforcement of the ordinance against the plaintiffs was enjoined, and a preliminary injunction pending a resolution of the controversy on its merits would not disserve the public interest. Finally, the plaintiffs are likely to succeed on their Fourteenth Amendment challenge to the constitutionality of Greenfield Code sections 21.085, 13.04, and 21.06(6) as applied.

Accordingly, for all the reasons stated,

IT IS ORDERED that the plaintiffs' motion for a preliminary injunction be and it hereby is granted.

IT IS FURTHER ORDERED that unless the court receives within sixty days from the filing date of this order a request in writing from the plaintiffs or the defendants for a trial of the plaintiffs' claims along with a statement of contested facts, the preliminary injunction issued today will become permanent, and judgment will be entered in favor of the plaintiffs and against the defendants without further notice from the court.